# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENDRIK BLOCK,<br><br>   Plaintiff,<br><br> v.<br><br>ESKANDAR T. ALZAMZAMI, individually and dba FATBOY MARKET, et al.,<br><br>   Defendants.<br>_____/ | Case No. 1:23-cv-00061-JLT-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART AND ORDER VACATING HEARING**<br><br>(Doc. 18)<br><br>**OBJECTIONS DUE: 21 DAYS** |

## I.  INTRODUCTION

On January 17, 2024, Plaintiff Hendrik Block ("Plaintiff") filed a motion for default judgment against Defendants Eskandar T. Alzamzami, individually and dba Fatboy Market, and Nahla Mohammed Muharram (collectively "Defendants"). (Doc. 18.) No opposition to Plaintiff's motion was filed. The Court has reviewed the motion and supporting documentation and determines that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g). As such, the hearing on the motion set for February 21, 2024, shall be VACATED.

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED IN PART in the amount of **$2,538.15.**

## II. FACTUAL BACKGROUND

On January 12, 2023, Plaintiff Hendrik Block ("Plaintiff") filed his complaint against Defendants alleging claims under the American with Disabilities Act (ADA), California's Unruh Civil Rights Act, and California's Health and Safety Code. (Doc. 1). These claims stem from alleged barriers Plaintiff encountered (such as a lack of designated accessible parking stalls) while he visited a facility owned, operated, or leased by Defendants—Fatboy Market (the "Facility"). (*See id.*) The complaint asserts a claim for injunctive relief arising out of an alleged violation of the ADA, a claim for damages pursuant to the state law claims, and an award of attorney's fees and costs. (*See id.*)

Defendants were served with summons and the complaint on January 20, 2023. (Docs. 4 & 5.) Neither of the defendants responded to the complaint. Plaintiff requested that the Clerk of Court enter default against Defendants on March 6, 2023; default was entered that day. (Docs. 6 & 7.)

Following an order to show cause to which Plaintiff responded (*see* Docs. 8 & 9), on April 14, 2023, the undersigned issued findings and recommendations, recommending that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that the claims be dismissed, without prejudice, pursuant to 28 U.S.C. § 1367(c)(4). (Doc. 11.) On May 8, 2023, the presiding District Judge issued an order adopting the undersigned's recommendation to decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissed them without prejudice. (Doc. 13.)

On January 17, 2024, Plaintiff filed a motion for default judgment against Defendants on his remaining ADA claim, which is currently pending before Court.[1] (Doc. 18.)

## III. DISCUSSION

**A.  Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092

---

[1] This motion is referred to the undersigned by Local Rule 302(c)(19) for the entry of findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B).

(9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.   Analysis**

    **1.   The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

        **a.   Possibility of Prejudice to Plaintiff**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendants participate and make an appearance in the litigation – which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("prejudice" exists where the plaintiff has no "recourse for recovery" other than default judgment). Therefore, Plaintiff would be prejudiced if the Court were to deny its motion. This factor weighs in favor of default judgment.

        **b.   Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pleaded in the complaint as well as the general sufficiency of the complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v.*

3

*Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined as a failure to remove "barriers . . . where such removal is readily achievable." *Id*. at § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011) (en banc). Where a barrier's removal is not "readily achievable," a public accommodation must make its facilities available through "alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

According to the complaint, Plaintiff is "substantially limited in his ability to walk, "must use a cane, walker, wheelchair or electric scooter for mobility," and he is thus "physically disabled" as defined by the applicable federal laws. (Doc. 1, ¶ 8.) As a shopping market (*see id*. ¶ 10), the Facility is a facility of public accommodation, does not function as a residence, and its activity affects commerce. (*Id*. ¶ 9.) Plaintiff alleges that Defendants own, operate, or lease the Facility (*Id*. ¶ 7.); thus, they are allegedly liable for the Facility's compliance with the ADA.[2]

Plaintiff visited the Facility on or about July 25, 2022, and alleges that Defendants failed to provide barrier-free access to the Facility in the following ways: (1) there were no designated

---

[2] Defendants are jointly and severally liable for ADA violations in any of these capacities. *See Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000).

accessible parking stalls in the Facility's parking lot; (2) Plaintiff had difficulty maneuvering through the entrance door and into the Facility because of damaged flooring that created excessive height changes, which were difficult to propel his wheelchair over; and (3) the credit card reader was located on top of an excessively high transaction counter making it difficult for Plaintiff to see and reach the payment device from his wheelchair-seated position, and as a result he could not see the amount he was being charged for his purchase. (Doc. 1, ¶ 10.)

Plaintiff alleges that the removal of these architectural barriers is readily achievable, or alternatively, the services could have been made available through alternative methods that were readily achievable. (Doc. 1, ¶¶ 21–22.) As these facts are taken as true regarding Defendants following entry of default against them, Plaintiff has met his burden of stating a *prima facie* Title III discrimination claim.

The complaint therefore sufficiently states Plaintiff's claim under Title III of the ADA, and there appears to be merit to the substantive allegations. *See Loskot v. D & K Spirits, LLC,* No. 2:10-cv-0684-WBS-DAD, 2011 WL 567364 at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment). *See also Gutierrez v. Leng*, No. 1:14-CV-01027-WBS, 2015 WL 1498813, at *4 (E.D. Cal. Mar. 31, 2015) (same). As such, these *Eitel* factors weigh in favor of default judgment.

### c.    The Sum of Money at Stake in the Action

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable considering the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594-JSW, 2007 WL 1545173 at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff is seeking a default judgment in the amount of $3,056.65, comprised of $2,268.50 in attorney's fees and $788.15 in costs. (Doc. 18 at 2; Doc. 18-1 at 7–8.) This is not a relatively large sum of money, nor does it appear unreasonable, subject to the deductions set forth below.

### d. The Possibility of a Dispute Concerning the Material Facts

Regarding this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917–18, and Defendants have submitted nothing to contradict the well-pleaded allegations in the complaint. *See United Specialty Insurance Co. v. Saleh*, No. 1:16-cv-00632-DAD-MJS, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016) ("Inasmuch as default serves as an admission of Plaintiff's well-pled allegations of fact, it must be concluded that there is no dispute as to any material fact.") (internal citation omitted). Accordingly, this factor favors entry of default judgment.

### e. Whether Default Was Due to Excusable Neglect

Defendants failed to file responsive pleadings or oppose Plaintiff's motion for default judgment. The Court has no evidence before it to demonstrate Defendants' failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

### f. Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

## 2. Terms of the Judgment and Proof of Relief

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of relief and the terms of the judgment sought by Plaintiff.

### a. Injunctive Relief

Plaintiff's complaint and motion for default judgment seek an injunction requiring Defendants to make several changes and accommodations at the Property. (Doc. 1, ¶ 10; Doc. 18-1 at 5–6.) As the factual allegations in the complaint are taken as true, Plaintiff is entitled to injunctive relief as requested pursuant to federal law. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA – only injunctive relief is available for violations of Title III.").

### b. Attorney's Fees and Costs of Litigation

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion. Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [*See D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990); *Hensley v. Eckerhart*, 461 U.S. 424,] 461 (1983)]. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *See Hensley*, 461 U.S. at 433.
>
> A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [Footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

Plaintiff seeks an award of $2,268.50 for total billable time spent on the case by the Moore Law Firm, as well as $788.15 for costs and litigation expenses. (Doc. 18-1 at 7–8; Docs. 18-3.) Plaintiff requests (1) $1,590.00 for 5.3 hours of work expended by Tanya E. Moore, Esq., at an hourly rate of $300; (2) $368.00 for 3.2 hours spent by paralegal Whitney Law at an hourly rate of $115; and (3) $310.50 for 2.7 hours spent by paralegal Isaac Medrano at an hourly rate of $115.

7

(Doc. 18-1 at 7–8.)

          i.        Hourly Rates

First, Plaintiff proposes $300.00 per hour as a reasonable hourly rate for Ms. Moore and $115.00 per hour for each paralegal. (Doc. 18-1 at 7.) Having reviewed the declaration of Ms. Moore (*see* Doc. 18-2 at 2–3), the Court finds that Plaintiff's proposed rates are consistent with the rates of comparable lawyers and paralegals in the Fresno Division, having recently previously awarded attorney's fees to the Moore Law Firm at these rates. *See, e.g., Gilbert v. Castrejon*, No. 1:22-CV-00319-SKO, 2024 WL 457114, at *3 (E.D. Cal. Feb. 6, 2024) (concluding that $300 attorney rate and $115 paralegal rate for Ms. Moore's law firm was reasonable in ADA case). *See also Gilbert v. HBA Enterprises, Inc*., No. 1:21-CV-01358-JLT-SAB, 2022 WL 2663761, at *17 (E.D. Cal. July 11, 2022), *report and recommendation adopted*, 2022 WL 3327461 (E.D. Cal. Aug. 11, 2022) (same).

          ii.        Hours Reasonably Expended

Next, the Court proceeds to the second part of the lodestar analysis—the hours claimed to have been reasonably expended in this case.

The Court finds that the number of hours the Moore Law Firm billed in this case is not reasonable given the nature of this case, the tasks involved, and the Firm's experience in these types of actions. On January 12 and 13, 2023, Ms. Moore recorded 1.0 hour preparing a "mandatory CCDA report." (Doc. 18-3 at 2.) As this Court has previously found, this task is "clerical in nature." *See Gilbert v. Gsarwar Inc*., No. 2:21-CV-02032-MCE-JDP, 2022 WL 4245325, at *4 (E.D. Cal. Sept. 15, 2022), *report and recommendation adopted*, 2022 WL 7101283 (E.D. Cal. Oct. 12, 2022) (deducting 0.3 hours spent by a paralegal to prepare and submit a report "on CCDA portal."). The Court will therefore deduct 1.0 hour from Ms. Moore's time entries in January 2023. *See Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1993) ("It simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost.").

On January 16, 2023, Mr. Medrano recorded 0.30 hour reviewing the Court's "scheduling order," calendaring a "hearing," and setting the "deadline to complete Rule 26 call and [the] deadline

1 to file joint scheduling report." (Doc. 18-3 at 2.) He also recorded a total of 0.6 hour in May, June, 2 and September 2023 reviewing the Court's "minute order[s] to continue [the] scheduling 3 conference, calendaring a "hearing," and setting the "deadline to complete Rule 26 call and [the] 4 deadline to file joint scheduling report." Mr. Medrano's time of 54 minutes for reviewing the 5 Court's standard scheduling order and one-sentence minute orders, and for calendaring the deadlines 6 for preparing and filing the parties' joint scheduling report, is excessive—0.2 hour (12 minutes) is 7 sufficient. *See Hensley*, 461 U.S. at 433–34. The Court will therefore reduce Mr. Medrano's the 8 time spent on these tasks by 0.7 hour.

9 On March 3, 2023, Mr. Medrano recorded 0.7 hour preparing the request for entry of default 10 and supporting declaration, and certificate of service. (Doc. 18-3 at 3.) These documents total only 11 three pages, excluding the captions, and are nearly identical to documents Ms. Moore's firm has 12 filed in other cases, except for the party names and ECF document numbers. The preparation and 13 finalization of these short, form-like documents should not take more than 0.5 hour (30 minutes) 14 total; as such, Mr. Medrano's March 3, 2023, time will be reduced by 0.2 hour.

15 In March and April 2023, Mr. Medrano and Ms. Law collectively recorded 0.7 hour 16 reviewing the Court's order to show cause why the Court should exercise supplemental jurisdiction 17 and preparing a response to the order. (Doc. 18-3 at 4.) Excessive time spent reviewing the Court's 18 orders, particularly orders that are substantially similar to those issued in others of Ms. Moore's 19 cases, is not recoverable. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) ("purely 20 clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs 21 them"); *see also Block v. California-Fresno Inv. Co.*, Case No. 1:22-cv-00597-ADA-EPG, 2022 22 WL 17455502, at *11 (E.D. Cal. December 6, 2022) (awarding no fee for Mr. Medrano's aggregate 23 1.3 hours that consisted of "purely clerical work or secretarial tasks," such as reviewing court 24 orders.) In addition, time spent preparing the response to the order to show cause is excessive, given 25 that it is nearly identical to those filed by the Moore Law Firm in other cases. (*Compare*, e.g., Doc. 26 9 with Doc. 13, *Gilbert v. Ramos Diaz Enters., Inc.*, 1:22-cv-01397-KJM-KJN (filed June 13, 27 2023).) These circumstances warrant a reduction by 0.2 hour in the paralegal time spent on these 28 tasks.

1  Finally, Mr. Medrano recorded 0.3 hour preparing the notice of motion for entry of default
2  judgment on April 28, 2023, and Ms. Law reported spending a total of 1.5 hours on January 16,
3  2024, preparing and finalizing the motion and supporting documents. (Doc. 18-3 at 3–4) The
4  motion for default judgment filed in this case is nearly identical to motions for default judgment
5  filed by the Moore Law Firm in other actions before this Court. "Accordingly, the Court finds that
6  . . . one hour of [paralegal] time is sufficient to prepare the motion." *Gutierrez*, 2015 WL 1498813,
7  at *9 (quoting *Moore v. E-Z-N-Quick*, No. 1:13-cv-01522-LJO-SAB, 2014 WL 1665034 (E.D. Cal.
8  Apr. 24, 2014)). *See also Trujillo v. Ali*, No. 1:16-cv-00694-LJO-SKO, 2016 WL 6902313, at *7
9  (E.D. Cal. Nov. 23, 2016). The Court will therefore deduct 0.8 hours of paralegal time related to
10 the preparation and filing of the motion for default judgment.

11 Based on the foregoing, the Court recommends Plaintiff be awarded $1,290 for the 4.3 hours
12 of time expended by Ms. Moore at an hourly rate of $300, and $460 for the 4.0 hours of time
13 expended by both Mr. Medrano and Ms. Law at an hourly rate of $115, for a total amount of $1,750
14 in attorney's fees.

iii.   Litigation Expenses and Costs

16 Plaintiff seeks to recover costs in the amount of $788.15. (Doc. 18-1 at 8; Doc. 18-3.) In
17 Section 12205 of the ADA, Congress authorized a district court, in its discretion, to allow the
18 prevailing party other than the United States to recover a reasonable attorney's fee, including
19 litigation expenses and costs. 42 U.S.C. § 12205. The statutory provisions of the ADA provide
20 direct authority for the award of expert witness fees as litigation expenses under the ADA. *See*
21 *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). The costs here include expenses for the
22 court filing fee, costs of service, and a fee for a pre-filing site inspection of the Facility (*see* Doc.
23 18-3 at 6–11), which are compensable pursuant to 42 U.S.C. § 12205 and *Lovell*. 303 F.3d at 1058.
24 Plaintiff's overall litigation expenses and costs are compensable and should be awarded. It is
25 recommended that Plaintiff be awarded the sum of $788.15 for litigation expenses and costs.

iv.   Joint and Several Liability

27 In general, under federal law, liability among defendants for a successful plaintiff's
28 attorney's fees is generally joint and several. *Turner v. Dist. of Columbia Bd. of Elections & Ethics*,

354 F.3d 890 (D.C. Cir. 2004) (joint and several liability for attorney's fees awarded under 42 U.S.C. § 1988 for all non-fractionable claims against defendants); *Corder v. Gates*, 947 F.2d 374 (9th Cir. 1991) (district court did not err in refusing to apportion attorney's fees among defendants in awarding fees under 42 U.S.C. § 1988).

### c. Conclusion

For the reasons set forth above, the Court recommends Plaintiff be awarded **$1,750** in attorney's fees and **$788.15** for the costs of suit. Thus, the total award of fees and costs recommended is **$2,538.15**.

### IV. RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, it is HEREBY ORDERED that the hearing on Plaintiff's motion for default judgment (Doc. 18) set for February 21, 2024, is VACATED.

The Court RECOMMENDS that:

1. Plaintiff's motion for default judgment (Doc. 18) be GRANTED IN PART;

2. Judgment be entered in Plaintiff's favor and against Defendants Eskandar T. Alzamzami, individually and dba Fatboy Market, and Nahla Mohammed Muharram, jointly and severally.

3. Defendants be found and declared to be in violation of Title III of the Americans with Disabilities Act;

4. Plaintiff be awarded reasonable attorney's fees in the amount of $1,750 and costs of suit in the amount of $788.15; and

5. Defendants be ordered to make the following modifications to the Facility known as Fatboy Market, located at 1408 North Cedar Avenue, Fresno, California 93703, such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, as follows:

    a. Provide a properly configured, located, and identified accessible parking stall with adjacent access aisle;

     b.  Repair damaged flooring to eliminate excessive changes in level from the required maneuvering clearances at the Facility entrance; and

     c.  Provide a properly configured accessible transaction counter.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the defendants at the defendant's last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within twenty-one (21) days of service** of these findings and recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**February 15, 2024**__      /s/ *Sheila K. Oberto*
                 UNITED STATES MAGISTRATE JUDGE